## ELECTRICITIES OF NORTH CAROLINA and the Cities of Bennettsville and Camden South Carolina, Petitioners,

v.

## FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Carolina Power & Light Company, North Carolina Electric Membership Corporation & Four County Electric Membership Corporation, Intervenors.

No. 79–1205.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 10, 1983.

Decided May 31, 1983.

James N. Horwood, with whom P. Daniel Bruner, was on brief and David R. Straus, Washington, D.C., for petitioners.

Robert F. Shapiro, F.E.R.C., with whom Jerome M. Feit, Washington, D.C., was on brief, for respondent. Howard E. Shapiro, Andrew M. Zack, and Joanne Leveque, F.E. R.C., Washington, D.C., also entered appearances for respondent.

* Sitting by designation pursuant to 28 U.S.C.

Robert T. Hall, III, Richard M. Merriman, Floyd L. Norton, IV, and Johnson A. Salisbury, Washington, D.C., were on brief for intervenor Carolina Power & Light Co.

Thomas J. Bolch, Raleigh, N.C., entered an appearance for intervenor North Carolina Elec. Membership Corp., et al.

Before TAMM and GINSBURG, Circuit Judges, and JOHN W. PECK,* U.S. Senior Circuit Judge for the Sixth Circuit.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

This case is a challenge by ElectriCities to the Federal Energy Regulatory Commission's decision to allow Carolina Power & Light Company (CP & L) to normalize four classes of tax benefits in wholesale rates in effect from May 1, 1976, through December 28, 1977. ElectriCities argues (1) that the Commission incorrectly interpreted Order No. 530–B not to require it to address whether CP & L's use of normalization would result in tax savings, (2) that Opinion No. 19–A is arbitrary because it is inconsistent with a later order, and (3) that the Commission should have rejected CP & L's use of normalization for construction-related interest because CP & L contended that its treatment of the item was not normalization. We find none of these arguments convincing and affirm the Commission's decision.

## I. BACKGROUND

Today in *Public Systems v. FERC*, Nos. 82–1183 & 82–1214, we upheld as reasonable the Commission's normalization policy. We incorporate that opinion's discussion of the normalization versus flow-through issue into this opinion and will here only briefly discuss the issue.

Income taxes are one of the costs of service that the Commission must consider in setting wholesale rates for public utilities. Determining the cost of service tax allowance is difficult because of timing difference transactions, which occur when an

§ 294(d) (1976).

expense or revenue is recognized for tax filings in periods before or after it is recognized in rates. For example, ratemaking rules may require that a current expense not be borne entirely by current ratepayers but rather be charged to customers over time, while tax rules may permit the utility to deduct the entire expense in the current year. The issue then is whether the utility's tax deduction for the expense should reduce rates only in the current year, the flow-through method, or whether the benefit of the tax deduction should be spread over the period that ratepayers are charged for the expense, the normalization method. The flow-through versus normalization dispute focuses primarily on the possibility that normalization will result in ratepayers' being charged for taxes that are never paid by the utility. Over the past twenty years the Commission has several times changed its policy on normalization versus flow-through.

In June 1975, the Commission issued Order No. 530, 5 Fed. Power Serv. (MB) 5–1017, announcing a general policy of permitting normalization upon an appropriate factual showing. *Id.* at 5–1024. On January 19, 1976, the Commission issued Order No. 530–A, 8 Fed. Power Serv. (MB) 5–224, which clarified Order No. 530 by stating that a utility seeking normalization would have to demonstrate that only tax deferral, as opposed to tax savings, would result from the change. *Id.* at 5–228. On July 6, 1976, the Commission amended its rule by issuing Order No. 530–B, 10 Fed. Power Serv. (MB) 5–187, which adopted a general policy of permitting normalization as long as only timing differences are involved. *Id.* at 5–188–89. The Commission held normalization the preferable method for ratemaking and accounting purposes. *Id.*

Several municipally-owned utilities challenged the Commission's orders as permitting regulated companies to receive payments for tax costs that they may never incur. In *Public Systems v. FERC*, 606 F.2d 973 (D.C.Cir.1979) [hereinafter *Public Systems I*], this court held that the Commission had failed to "assess the consequences of its action for the industry" and

to "indicate 'fully and carefully' the purposes behind the order," *id.* at 980, and remanded the orders to the Commission, *id.* at 983. Shortly after the court's decision, the Commission issued an Order Establishing Interim Procedures in Docket Nos. R–424 and R–446 (June 8, 1979), 44 Fed.Reg. 34,471 (1979), that provided that Order No. 530–B would remain in effect pending the outcome of the new rulemaking and that all rate decisions would include a provision permitting utilities to retain amounts related to normalization subject to refund. *See Cities of Batavia v. FERC*, 672 F.2d 64, 78–79 (D.C.Cir.1982).

In response to *Public Systems I*, the Commission conducted a rulemaking that resulted in a final rule requiring utilities and pipelines to use normalization for all timing difference transactions not covered by prior Commission orders. Order No. 144, 22 Fed. Power Serv. (MB) 5–96 (FERC May 6, 1981). The Commission found that over time normalization will be more equitable to ratepayers than flow-through, *id.* at 5–98, that normalization will not lead to permanent tax savings, *id.* at 5–100, and that any increase in rates will be insubstantial, *id.* at 5–99. Today in *Public Systems II* we upheld the Commission's normalization policy as the product of reasoned decisionmaking.

## II. Facts

On January 30, 1976, shortly after the issuance of Order No. 530–A, CP & L filed a wholesale rate increase that used normalization for several expenses. In testimony submitted with the filing, CP & L stated that it was using normalization for taxes during construction that were currently deducted for tax purposes but capitalized for rate purposes, for differences between tax and book lives of property, and for pension costs that were currently deducted for tax purposes but capitalized for rate purposes. Testimony of Paul S. Bradshaw, Assistant Treasurer of CP & L, at 6–7 (Jan. 29, 1976), Joint Appendix (J.A.) at 26–27. ElectriCities, an association of municipal electric systems that purchase electricity at wholesale

from CP & L, filed a protest and petition to intervene that challenged the adequacy of the company's showing that normalization would result in a tax deferral rather than a tax savings as required by Order No. 530–A. ElectriCities also argued that CP & L had normalized construction-related interest payments but had not mentioned this item in the testimony. The Commission at first agreed with ElectriCities and ordered CP & L to file revised tariff sheets reflecting the elimination of normalization. CP & L, however, applied for a rehearing and stay and submitted additional testimony. In this testimony the company described its treatment of construction-related interest expense, which it stated was not normalization but rather intraperiod tax allocation. Additional Testimony of Paul S. Bradshaw at 2–3 (March 23, 1976), J.A. at 30–31. On April 12, 1976, the Commission stayed its disposition of the case until the rehearing of Order No. 530–A was completed and Order No. 530–B was issued, which occurred on July 6, 1976. The hearings in the present case then began on February 22, 1977. Interpreting Order No. 530–B as abolishing the requirement of a specific showing that a tax deferral rather than a tax savings would result, the administrative law judge in his initial decision upheld CP & L's use of normalization. *Carolina Power & Light Co.*, Docket No. ER76–495, Initial Decision at 46 (FERC Sept. 7, 1977), J.A. at 163, 210. The Commission affirmed the initial decision on this issue. *Id.*, Opinion No. 19 at 2 (FERC Aug. 2, 1978), J.A. at 316, 319, *aff'd on rehearing,* Opinion No. 19–A at 8 (FERC Feb. 21, 1979), J.A. at 354, 362. ElectriCities now challenges Opinion Nos. 19 and 19–A, and CP & L intervenes to support the Commission's position.

### III. DISCUSSION

First, ElectriCities argues that the Commission incorrectly interpreted Order No. 530–B not to require it to address whether CP & L's use of normalization would result in a tax savings rather than a tax deferral. Order No. 530–A, 8 Fed. Power Serv. (MB) 5–224, had clearly required a utility seeking normalization to demonstrate that only tax deferral, as opposed to tax savings, would

result from the change. *Id.* at 5–228. However, in Order No. 530–B, 10 Fed. Power Serv. (MB) 5–187, which was issued prior to the commencement of hearings in the present case, the Commission stated:

In short, we believe that the Commission's intention in Order No. 530–A should be restated so as to allow normalization in any case where the difference in the recognition of an item for tax and book purposes is clearly only a timing difference. The seven items specifically listed in Order No. 530 at pages 6 and 7 represent items for which there is only a timing difference. Normalization will not be permitted for items on which it can be shown that the difference between the recognition of such items for tax and book purposes is a permanent difference.

*Id.* at 5–193. Shortly thereafter and before the presiding judge's initial decision in the present case, the Commission held that Order No. 530–B permitted the normalization of timing differences in all cases. *New England Power Co.,* Opinion No. 803, 12 Fed. Power Serv. (MB) 5–341, 5–354 (FERC June 6, 1977). The presiding judge in the instant case followed this interpretation of Order No. 530–B. Initial Decision at 46, J.A. at 210. Shortly before the issuance of the Commission's Opinion No. 19–A, however, this court decided *Public Systems v. FERC,* 606 F.2d 973 (D.C.Cir.1979), in which the court stated:

A rule favoring normalization would reverse the presumptions in rate hearings. Rather than require a demonstration that normalization will generate only a tax deferral, Order 530–B would require a showing that a saving would occur in order to bar [normalization].

*Id.* at 978. Without discussion of the issue, the Commission affirmed the decision of the administrative law judge on the normalization question. Opinion No. 19 at 2, J.A. at 316, 319, *aff'd on rehearing,* Opinion No. 19–A at 8, J.A. at 354, 362.

ElectriCities argues that the *Public Systems I* court interpreted Order No. 530–B as merely reversing the burden of

proof. Rather than requiring the utility to make a showing of no tax savings, Order No. 530–B, ElectriCities contends, requires the opponents of normalization to show that tax savings would occur. This interpretation, however, contradicts the plain language of Order No. 530–B. "The principles of setting just and reasonable rates forbid the normalization of tax effects only when there will in fact be a permanent difference between treatment of items for tax purposes and book purposes." Order No. 530–B, 10 Fed. Power Serv. (MB) at 5–188. "[I]t shall be our policy to permit such normalization upon a showing simply that the tax effect being normalized relates only to timing differences rather than to permanent differences between book and tax treatment." *Id.* at 5–189. "[T]he Commission's intention ... [is] to allow normalization in any case where the difference ... is clearly only a timing difference." *Id.* at 5–193. "[T]he Commission's policy favoring normalization should be implemented in each case." *Id.* at 5–194. In the face of this clear language, we read the *Public Systems I* court's interpretation of Order No. 530–B to be that the opponents of normalization may submit evidence of tax savings only when there is a question whether the particular item is a timing difference or a permanent difference. In cases where the items are clearly timing differences, there is no opportunity to argue that tax savings result because the Commission in Order No. 530–B determined that only tax deferral results in such cases and because today in *Public Systems II* we held that this policy is reasonable and adequately supported in Order No. 144. The four items normalized by CP & L were clearly timing differences, as they were among the seven items listed as examples of timing differences in Order No. 530, 5 Fed. Power Serv. (MB) at 5–1021. Therefore, the Commission correctly interpreted Order No. 530–B and properly applied it in this case.

■ Second, ElectriCities argues that Opinion No. 19–A is arbitrary because it is inconsistent with the Order Establishing Interim Procedures in Docket Nos. R–424 and R–446 (June 8, 1979), 44 Fed.Reg. 34,471 (1979). When CP & L filed its rate increase in 1976, Order No. 530–A required it to make a factual showing of tax deferral if it wished to use normalization. CP & L attempted to make such a showing. Following the remand of Order No. 530–B, and three months after its decision in the present case, the Commission issued an interim order. It provided that utilities seeking to use normalization need not make a factual showing of tax deferral, but if a utility chooses to file testimony on the issue, all other parties in the proceeding may also file testimony. 44 Fed.Reg. at 34,472.

ElectriCities contends that the Commission acted arbitrarily in refusing to consider evidence of tax savings in the present case because its interim order would have required it to do so if it had been in effect. The Commission responds that the present case is unlike the cases covered by the interim order. CP & L did not voluntarily choose to make a showing of tax deferral; rather, Order No. 530–A required it to do so if it wished to use normalization. If the interim order had issued before it filed the rate increase, CP & L probably would not have attempted to make the showing, as it would have had no incentive to do so, and ElectriCities would have had no right to present evidence of tax savings. Moreover, when the interim order issued, the Commission was uncertain how it would ultimately respond to the remand of Order No. 530–B. The interim order permitted a utility that believed it would eventually have to make a showing of tax deferral to do so immediately if it wished, but the order did not state how the Commission would respond to the showing. We find that Opinion No. 19–A is not arbitrarily inconsistent with the interim order.

■ Third, ElectriCities argues that the Commission should have rejected CP & L's use of normalization for construction-related interest expenses because CP & L contended in its direct evidentiary presentation that its treatment of the item was not normalization. In the Order Denying Rehearing of Order No. 530–B, 56 F.P.C. 1376 (1976), the Commission stated:

It is necessary at this point to clarify the Commission's intention with respect to implementing Order No. 530–B. The Commission intends to permit normalization of items, as discussed in Order No. 530–B, only in those rate cases where the utility has requested normalization in its *direct evidentiary presentation.* The Commission will not entertain requests to amend pending rate cases to reflect normalization of items for which such treatment has not already been requested. This is sound administrative policy and will help prevent undue delays in the resolution of pending rate proceedings. *Id.* at 1379–80 (emphasis in original). In its direct presentation CP & L listed three items that it sought to normalize, but it stated that its treatment of construction-related interest was not normalization but rather intraperiod tax allocation. Additional Testimony of Paul S. Bradshaw at 2–3 (March 23, 1976), J.A. at 30–31. The testimony, however, thoroughly explained the company's treatment of the item:

The effect of using the net-of-tax method is shown on my Exhibit No. 34 (PSB–29). That exhibit illustrates how CP & L accounts for the tax effect of interest related to construction work in progress. As it shows, the interest related to CWIP is considered to be a non-operating expense [$10,000] and is, therefore, a deduction from non-operating income. After subtracting this expense, taxable non-operating income is determined [$2,000] and taxes are calculated on this amount [$1,000]. Thus, all taxes in connection with interest related to CWIP are accounted for on a current basis and are not deferred. This is completely an *intraperiod* tax allocation item and is not in any way an *interperiod* item.

I should also point out that the Company's treatment equitably apportions the tax effects of interest deductions between ratepayers, both present and future, and the Company's stockholders. Rather than flowing through to current ratepayers the tax benefits of interest related to construction of plant not yet in service, the benefits are passed on to consumers in rates over the service lives of the constructed plant, while stockholders receive the benefit of current tax deductions. The lower after-tax AFUDC rate ultimately reduces recorded plant investment and thus reduces rate base. Cost of service is also reduced over the life of the plant through reduced depreciation charges. Thus, the long-range tax benefits of interest expenses associated with facilities under construction will flow to the future customers who use the facilities.

*Id.* at 3, J.A. at 31 (emphasis in original). It is clear that the company was using the net-of-tax method, which the Commission has recognized as one form of tax normalization. Order No. 530–A, 8 Fed. Power Serv. (MB) at 5–225. Although CP & L incorrectly stated that its method was not normalization, it did in fact file a rate case using normalization for construction-related interest. Therefore, CP & L met the requirement of the order denying rehearing, and the Commission properly permitted normalization of the item.

## IV. Conclusion

We find that the Commission correctly interpreted Order No. 530–B not to require it to address whether CP & L's use of normalization would result in tax savings, that Opinion No. 19–A is not arbitrary, and that the Commission properly permitted CP & L to normalize construction-related interest expense. Accordingly, the Commission's decision is

*Affirmed.*